467 So.2d 65 (1985)
Dr. Henry DUPRE, M.D., Plaintiff-Appellee,
v.
Ernest MARQUIS and Ronald Bertrand, Defendants-Appellants.
No. 84-217.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1985.
Rehearing Denied April 23, 1985.
Writ Denied June 17, 1985.
*66 G. Paul Marx, Lafayette, Christovich & Kearney, Joseph B. Ballard, New Orleans, for defendants-appellants.
C. Brent Coreil, Ville Platte, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
DOUCET, Judge.
This appeal arises from a suit by Dr. Henry Dupre to recover damages from Ernest Marquis and Ronald Bertrand, the attorney who formerly represented Marquis, for the negligent and wrongful institution of a medical malpractice action.
On August 21, 1977, Ernest Marquis, a commercial pilot, was injured in an airplane crash near Ville Platte. He was then taken to the Ville Platte General Hospital emergency room. There he was examined and hospitalized for his injuries. He remained in the hospital for about four days. He left the hospital without being discharged to seek care elsewhere.
On August 18, 1978, Marquis, through his attorney Ronald Bertrand, filed a medical malpractice action against Dr. Francisco Cantu, XYZ Insurance Company, Dr. J.P. Higgins, Dr. Henry Dupre, and Ville Platte General Hospital (d/b/a Humana, Inc.) based on information obtained from certified hospital records. The suit alleged various acts of negligence and prayed for damages against all defendants, in solido, in the amount of $1,250,000.00.
On September 27, 1978, Dr. Dupre filed counter suit against Earnest Marquis for libel and slander, and for malicious prosecution. It is from that suit that this appeal arises.
Dr. Dupre filed an exception of no cause or right of action to Marquis' malpractice petition on October 31, 1978. The exception was sustained by the trial court. Marquis appealed. This court reversed the decision of the trial court in Marquis v. Cantu, 371 So.2d 1292 (La.App. 3rd Cir.1979).
In June 1979, Mary Hornsby, a former employee of Ville Platte General Hospital, came forward and signed an affidavit saying that she made the entries in Marquis' hospital record mentioning Dupre. She stated that she made those entries in error, substituting Dr. Dupre's name for that of another doctor.
Bertrand was informed of this and agreed not to oppose a Motion for Summary Judgment by Dupre. On October 12, 1979, the motion was heard and granted, dismissing Dupre from the case. This judgment was not appealed.
On December 28, 1982, Dupre filed a supplemental and amending petition in his action against Marquis. He added Bertrand as a defendant and alleged negligent institution of the malpractice suit. Marquis filed third party demands against Mary Hornsby, Ville Platte General Hospital and Bertrand, as well as an exception of no cause of action to Dupre's suit. Bertrand filed an exception of prescription to Dupre's suit and an exception of no cause or right of action to the third party demand of Marquis. The court deferred ruling on the exceptions until after the trial on the merits. At that time the court overruled them all.
The court found that under La.C.C. 2315, Dupre was entitled to damages for negligent institution of suit. The court further found Marquis and Bertrand solidarily liable for having negligently filed suit without *67 sufficient investigation of the facts, and for continuing that suit after they had knowledge that Dupre was not involved in treating Marquis. Therefore, he applied the provisions of La.C.C. art. 3552 which states that the institution of suit against one solidary co-debtor interrupts prescription against all solidary co-debtors. As a result, he overruled Bertrand's exception of prescription to Dupre's suit. The court awarded $30,000 for lost income and $50,000 for mental anguish. Finally, the court dismissed Marquis' third party demand against Ville Platte General Hospital, Hornsby and Bertrand, and condemned Marquis and Bertrand to pay all costs of court. The court did not rule on any malicious prosecution or defamation issues. Marquis and Bertrand appeal from the judgment.
It must first be determined whether the appellee has stated a cause of action. Appellee Henry Dupre and Amici Curiae Louisiana State Medical Society and Louisiana Medical Mutual Insurance Company urge us to recognize a cause of action for purely negligent institution of suit. The jurisprudence in this state indicates that this action does not exist under our law. This court in Campbell v. Crawford, 378 So.2d 137 (La.App. 3rd Cir.1980), explained:
"Usually, a cause of action cannot be maintained for redress for these damages because it is fundamental to our system of justice that litigants have full access to the courts to assert claims in good faith. And, as was recognized in Kihneman v. Humble Oil & Refining Company, 312 F.Supp. 34 (E.D.La.1970), `the unsuccessful suitor is not to be held in damages merely because he was mistaken in his belief that he had a proper case.... For it is considered that burdening the unsuccessful plaintiff with such expense would tend to restrict access to the courts to affluent suitors.'"
In accord with this reasoning, we will not now recognize an action for negligent institution of suit.
However, damages are allowed for malicious prosecution upon a showing of malicious intent, a lack of probable cause to institute proceedings, and the termination of the proceedings in favor of the defendant in the original suit. Campbell v. Crawford, supra; Joyner v. Weaver, 337 So.2d 635 (La.App. 3rd Cir.1976). The record reveals no evidence that the defendants were motivated by malice in filing suit against Dupre. Therefore, Dupre has not stated a cause of action for malicious prosecution.
Damages may also be available to the appellee if he shows that he was injured by defamatory statements set out in the judicial pleadings prepared by Mr. Bertrand.
This court in Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3rd Cir.1981) writ denied 410 So.2d 760 (La.1981), thoroughly analyzed the elements of a defamation claim.
"The threshold issue in a defamation action is whether the complained of words are defamatory, i.e., capable of a defamatory meaning. Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2 Cir. 1975); Brown v. News-World Publishing Corporation, 245 So.2d 430 (La.App. 2 Cir.1971).

Brown v. News-World Publishing Corporation, supra, defined a defamatory statement on page 432 as:
`A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances *68 of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate.'"
In the original petition of the malpractice action, it was alleged that Dupre failed to properly diagnose, care for, and treat Marquis. Since the entire function of a doctor is comprised of these actions, it is clear that allegations of this kind would tend to deprive a physician of the benefits of public confidence or injure him in his occupation. They would also tend to injure his reputation, at least with respect to his occupation. Therefore, Dupre has alleged a prima facie case of defamation here. It remains to be determined whether the appellants may be held liable for any damages suffered by the appellee as a result of the allegedly defamatory statement. An examination of the relationship between them reveals that they may not. Marquis was relieved of all liability by Bertrand's unauthorized acts. In addition, the appellee's action against Bertrand prescribed before suit was filed.
The relationship between attorney and client is one of principal and agent. Gurley v. City of New Orleans, 41 La.Ann. 75, 5 So. 659 (La.1889); Succession of Zatarain, 138 So.2d 163 (La.App. 1st Cir.1962); Prophet v. McSween, 347 So.2d 11 (La.App. 3rd Cir.1977), writ denied 350 So.2d 902 (La.1977). Generally an agent is not responsible to third persons where his principal is disclosed. However, an agent may become personally liable if he expressly or impliedly pledges his own responsibility. Weeden Engineering Corp. v. Hale, 435 So.2d 1158 (La.App. 3rd Cir.1983); Castille v. Folck, 338 So.2d 328 (La.App. 3rd Cir. 1976), writ denied, 441 So.2d 764 (La.1983); La.C.C. art. 3013. One way in which an attorney may pledge his own responsibility is by going beyond the limits of his procuration. In that case "... whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity." La. C.C. art. 3010.
If Bertrand sued Dupre without the authorization of Marquis, he went beyond the limits of his procuration. The record shows that Marquis did not authorize Bertrand to sue Dupre. In fact, Marquis told Bertrand that he did not know and had not seen Dupre. Having thereby gone beyond the scope of his mandate, Bertrand became solely responsible for the consequences of his action in suing Dupre, unless Marquis ratified his conduct. The burden of showing ratification by the principal is on the party asserting ratification. To find ratification, the facts must reveal a clear intent to ratify. No intent may be inferred if the alleged ratification can be otherwise explained. Bamber Contractors, Inc. v. Morrison Engineering & Contracting Co., Inc., 385 So.2d 327 (La.App. 1st Cir.1980). It is true that Marquis did not ask Bertrand to dismiss Dupre from the suit. Marquis testified that after he informed Bertrand that he did not know Dupre, Bertrand said that he would take care of everything. As a layman, with little understanding of the law or of legal processes, Marquis simply trusted his attorney to do the right and proper thing. We do not believe that the burden of showing ratification has been carried. Therefore, Bertrand was solely responsible for any defamation resulting from the institution of suit against Dupre. Marquis and Bertrand were not solidarily liable. As a result, the trial judge was incorrect in holding that the provisions of La.C.C. art. 3552 interrupted the running of prescription against Bertrand.
The alleged defamation took place on August 18, 1978, when suit was filed against Dupre. On September 28, 1978, Dupre filed suit against Marquis. However, Bertrand was not added to that suit as a defendant until December 28, 1982, more than four years after the allegedly wrongful act took place. Defamation can be classified as an offense or quasi-offense. La.C.C. art. 3536 provides that actions for injurious words, verbal or written, and for *69 damages resulting from offenses or quasi-offenses are prescribed in one year. Deville v. Zaunbrecher, 401 So.2d 643 (La. App. 3rd Cir.1981) writ denied 406 So.2d 628 (La.1981) reconsideration denied 409 So.2d 638 (La.1981). As a result, all claims against Bertrand had prescribed before Dupre filed suit against him. Therefore, we need not reach the issue of whether Bertrand, by his failure to further investigate the allegations of the hospital records before filing suit, breached a duty owed to Dupre.
Accordingly, the judgment of the trial court is reversed and set aside. Bertrand's exception of prescription is granted. The appellee's suit is dismissed at his cost.
REVERSED.
LABORDE, J., concurs in the result.
YELVERTON, J., concurs in the result and assigns reasons.
YELVERTON, Judge, concurring.
I concur in the result. The reason I would reverse and dismiss is because no tort has been committed by either defendant. I believe that there is a duty owed by an attorney to refrain from tortiously injuring someone against whom he files suit. La.Civil Code arts. 2315 and 2316. However, the right of an uninvolved doctor to be protected against injury from the wrongful filing or maintaining of a medical malpractice suit against him must be balanced against a citizen's constitutional right of access to the courts, a lawyer's duty to represent his client, and, fundamentally, whether there was arguable justification for the filing and maintenance of the suit.
In my opinion the trial court was clearly wrong in holding that these defendants committed a tort against this plaintiff in this case. There was arguable justification for the attorney to both file and maintain a suit against Dr. Dupre.
After the initial conference with the former patient, Marquis' attorney obtained a certified copy of his hospital records from Ville Platte General Hospital. Those records contained two notations referring to Dr. Dupre. In one place there was written: "Dr. Dupre visited", while at another place there was the instruction: "Notify Dr. Dupre of results [of a bone scan] so patient may be discharged".
Marquis' attorney had no way of knowing that a nurse in the hospital had made those entries by mistake. Based on a reading of those notations in the medical records, it was reasonable for him to conclude that Dr. Dupre treated Ernest Marquis and that the patient was to be discharged on Dr. Dupre's orders.
The attorney justifiably relied on the contents of the certified hospital medical record. Even after Mr. Marquis told him he could not remember seeing Dr. Dupre in the hospital, the attorney was not unreasonable in continuing to rely on the disclosures in the medical record. Patients are sometimes unaware of the identity of every physician involved in their hospital treatment. Bertrand cannot be faulted for not dismissing the suit just because he was told by his client that he did not remember Dr. Dupre having anything to do with his treatment.
Nor should an attorney be held to the duty to dismiss a suit simply because he is informed by a defendant or the defendant's attorney, that the defendant is not liable in the case. The procedural means provided by law for obtaining such a dismissal is not to convince the attorney filing the suit, but to convince the court, through a motion for summary judgment, that there is no genuine issue of material fact and that the case should be dismissed. Dr. Dupre had an attorney who, instead of filing the proper vehicle for dismissal of the suit, which would have been a motion for summary judgment, chose instead to file an exception of no right of action, causing considerable delay while that matter worked its way through our court [Marquis v. Cantu, 371 So.2d 1291 (La.App. 3rd Cir.1979)] and back down again, before the suit was finally dismissed on a properly filed motion for summary judgment. Lawyers do not grant *70 summary judgments. Courts do. Lawyers and opposing litigants are adversaries. When the attorney for Marquis was furnished the affidavit of the person who entered the erroneous information into the Ville Platte Hospital record, and thereby acquired for the first time reliable evidence that the entries were erroneous, he obligingly indicated that he would have no opposition to a motion for summary judgment, and he kept his word. A motion for summary judgment was filed and granted, and the case was dismissed. I can see in this record no basis for any tort liability by Mr. Bertrand or his client to Dr. Dupre.
I concur in the result, for the reasons above stated.